# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**FELIX DEONTE WILLIS,**

    Plaintiff,

  v.                                                        Case No. 18-CV-1516

**BRANDON FISHER,** *et al.***,**

    Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

Felix Deonte Willis, a Wisconsin inmate representing himself, brings this lawsuit under 42 U.S.C. § 1983. He alleges that correctional officers, Brandon Fisher and Patrick Mahoney, failed to double-lock his handcuffs, which resulted in the handcuffs tightening to the point that they cut into his wrist and caused nerve damage. He also alleges that Jennifer Kacyon, a nurse, was deliberately indifferent to his injuries. The defendants have moved for summary judgment. (ECF No. 17.) After duly considering the evidence presented, for the reasons explained below, I will grant defendants' motion for summary judgment.

# RELEVANT FACTS[1]

Willis is a Wisconsin state prisoner at Waupun Correctional Institution (WCI). (ECF No. 25 at ¶ 1.) Fisher and Mahoney are correctional officers at WCI, and Kacyon is a registered nurse at WCI. (ECF No. 30 at ¶¶ 2–3.)

At the relevant time, Willis was assigned to the restricted housing unit at WCI. (*Id.* at ¶ 4.) As a prisoner in the restricted housing unit, Willis was required to be handcuffed whenever he was out of his cell. (*Id.* at ¶ 5.) On December 4, 2017, Fisher handcuffed Willis before he and Mahoney escorted Willis to a visiting booth for a scheduled visit. (ECF No. 25 at ¶¶ 6–7.) Officers are required to double-lock handcuffs to prevent them from ratcheting closed any further. (*Id.* at ¶ 9.) Fisher did not double-lock Willis's handcuffs. (*Id.* at ¶ 8.)

According to Willis, after he was handcuffed, he told Fisher that the handcuffs were too tight. (ECF No. 30 at ¶ 19.) Fisher responded with something along the lines of, "Shut the fuck up" and "Don't tell me how to do my job." (*Id.*) Mahoney did not respond to Willis's statement, and there is no evidence that Mahoney heard Willis's statement. Willis was then escorted to the visiting booth; the walk from Willis's cell to the visiting booth took about one minute. (ECF No. 25 at ¶ 10.) Willis was left handcuffed in the visiting booth. (*Id.* at ¶ 6.)

---

[1] The court takes the relevant facts from "Plaintiff's Responses to Defendants' Proposed Findings of Fact Pursuant to Fed. R. Civ. P. 56" (ECF No. 25), "Defendants' Response to Plaintiff's Proposed Findings of Facts" (ECF No. 30), and Willis's declaration (ECF No. 26). The facts are undisputed unless otherwise noted.

Approximately five to ten minutes after being left in the booth, Willis began to notice that the handcuffs were too tight.[2] (ECF No. 25 at ¶ 11.) He asserts that they continued to tighten with every move he made and began to bite into the back of his hands. (ECF No. 30 at ¶ 21.) He looked through the booth's door for an officer and began to kick the door in an attempt to get someone's attention. (*Id.* at ¶ 21; ECF No. 25 at ¶ 12.) Fisher and Mahoney assert that they were working in a different part of the unit, so they did not hear Willis banging on the door. (ECF No. 25 at ¶ 13.)

After about an hour, Mahoney was notified that Willis's visit was over and that he needed to be escorted back to his cell. (ECF No. 25 at ¶ 15; ECF No. 30 at ¶ 22.) Willis informed Mahoney that his handcuffs were too tight, so Mahoney immediately loosened the handcuffs and double-locked them. (ECF No. 25 at ¶ 16.) Mahoney then took Willis to a holding cell, secured Willis, took pictures of Willis's hands, and notified Fisher. (*Id.* at ¶ 17.)

At Willis's request, health services was called, and Kacyon examined Willis. (ECF No. 25 at ¶ 18.) She noted that there was no gross deformity and no swelling or bruising, but there were reddened circle patterns around the wrists and "pinpoint size" bleeding on the top of Willis's left hand. (*Id.* at ¶ 19.)

A couple of days later, on December 6, 2017, Willis filed an inmate complaint. (ECF No. 22-2 at 6–7.) Willis identified the issue of his complaint as "[d]amage to

---

[2] The defendants cite to Willis's deposition in support of this statement; however, they do not provide the court with the relevant transcript pages. The court notes that a party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Willis does not dispute that he made this statement at his deposition (ECF No. 25 at ¶ 11), so the defendants' omission is inconsequential.

[his] wrist due to cuffs being too tight and not double locked." (*Id.*) He included the following description:

> At 8:00 in the seg visit Booth at 8:00 Sgt Fisher locked me in cuffs extremely tight on my wrist without cutting [sic] double locking my handcuffs for my safety. I was in the visit booth beating on the door to get help because I could not feel my wrist. Due to being in that state for 30 mins and more my wrist were bleeding, numb, swollen and I could not feel my right [w]rist. Expecting severe nerve damage. CO Mahoney took me out of the visit booth and observed I was in pain. CO II Dorm took photos of the blood and swelling, and Bru[i]ses. Nurse Jennifer Ka[cyon] attended medical help. The nurse and CO Mahoney was su[pposed] to write out an incident report. Most of the incident should be on camera.

(ECF No. 22-2 at 6–7.)

On December 12, 2017, the inmate complaint examiner recommended that Willis's complaint be affirmed "to the extent to acknowledge the cuffs were not double locked." (ECF No. 22-2 at 2.) The inmate complaint examiner further noted, "No determination can be made as to how tight the cuffs were placed on inmate Willis and as such, whether it was the initial cuffing or the actions of inmate Willis himself that led to the observations of HSU staff at assessment." (*Id.*) Warden Foster accepted the inmate complaint examiner's recommendation a few days later and affirmed Willis's complaint. (*Id.* at 3.) Willis did not appeal the decision. (ECF No. 25 at ¶ 5.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629

4

F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party (here, Willis) and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

The defendants argue that Willis failed to exhaust the available administrative remedies on all his claims, except for his claim against Fisher for failing to double-lock the handcuffs. They also argue that, even if the court finds that Willis exhausted

5

the available administrative remedies, Willis's claims fail on the merits because there is no genuine issue of material fact as to whether the defendants were deliberately indifferent to Willis's safety or medical needs.

*1. Exhaustion of Available Administrative Remedies*

The defendants argue that Willis exhausted only his claim that Fisher failed to double-lock the handcuffs, not any claim related to the handcuffs being too tight. Additionally, they argue that Willis did not exhaust his claims against Kacyon and Mahoney because his grievance did not put the prison on notice that he was complaining about Mahoney's involvement or that Kacyon's medical treatment was inadequate.

Under the Prison Litigation Reform Act (PLRA), which applies to this case because Willis was incarcerated when he filed his complaint, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

The U.S. Supreme Court has advised that a prisoner's efforts to exhaust are "not *per se* inadequate simply because an individual later sued was not named in the grievance." *Jones v. Bock*, 549 U.S. 199, 219 (2007). However, it is well settled that an inmate's grievance must "alert[] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see also* Wis. Admin. Code § DOC 310.09(1)(e)[3] (a complaint "shall clearly identify the issue"). This is because "the primary purpose of requiring an inmate to exhaust his administrative remedies is to alert the state to the problem and invite corrective action." *Fluker v. County of Kankakee*, 741 F.3d 787, 794 (7th Cir. 2013) (internal quotation marks and citations omitted).

The Seventh Circuit has explained that, when the affirmative defense of exhaustion is raised, a court must address that issue first before turning to the merits of the case. *Id.* at 792–93. The Court of Appeals clarified, however, that under certain circumstances, it may make "perfect sense" for the court to also address the merits, even after deciding that a prisoner failed to exhaust his remedies. *Id.* at 791–94.

The defendants argue that Willis exhausted only his claim that Fisher failed to double-lock the handcuffs, not any claim related to the handcuffs being too tight, because Willis failed to appeal the warden's decision that no finding could be made about whether Fisher initially applied the handcuffs too tightly or whether the handcuffs had tightened over time. The defendants argue that the warden's

---

[3] References to the Wis. Admin. Code DOC 310 are to the December 2014 version, which was in effect at the relevant time.

affirmance of the inmate complaint was limited to a finding that Fisher failed to double-lock the handcuffs. They note that the decision specifically states that no finding could be made about how tightly Fisher placed the handcuffs on Willis. They argue that, to fully exhaust, Willis should have appealed that portion of the decision.

I disagree. Warden Foster's decision was to affirm Willis's complaint—not affirm in part, not affirm with modifications, but simply affirm. *See* Wis. Stat. Admin Code § DOC 310.12 (requiring reviewing authority to dismiss the complaint, dismiss the complaint with modifications, affirm the complaint, or affirm the complaint with modifications). The conditions that the defendants highlight appear only in the inmate complaint examiner's summary of the facts. No provisions in the administrative code address what a prisoner should do when his complaint is affirmed but the inmate complaint examiner's summary of the facts suggests the decision is to affirm only in part or with modifications. Because there was no rule for how to exhaust a claim under circumstances such as these, Willis cannot be deemed not to have exhausted his claim against Fisher. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (holding that, to satisfy the exhaustion requirement, a prisoner must complete the administrative process by following the rules the state has established for that process).

By contrast, I agree that Willis failed to exhaust the available administrative remedies on his claim against Kacyon. In his inmate complaint, Willis alleged that Fisher had put the handcuffs on him extremely tight without double-locking them, resulting in injuries. Specifically, as to Kacyon, he alleges that she "attended medical

8

help." (ECF No. 22-2 at 6.) However, Willis does not allege that Kacyon's treatment of his injuries was inadequate. Accordingly, nothing in the inmate complaint would have alerted the prison of a need to investigate Kacyon's conduct. Thus, Willis failed to exhaust his claim against Kacyon before he filed his lawsuit. Thus, she is entitled to summary judgment.

Similarly, Willis did not exhaust his claim against Mahoney. In his inmate complaint, Willis identifies only Fisher as the officer who handcuffed him. He does not state that Mahoney was present when he was initially handcuffed. Even if the inmate complaint examiner's investigation revealed that Mahoney was present at the time Fisher handcuffed Willis, his inmate complaint did not give the inmate complaint examiner any reason to suspect that Mahoney knew that Fisher had handcuffed him too tightly. Accordingly, Willis's complaint did not alert the inmate complaint examiner that there was reason to investigate Mahoney's failure to intervene. From Willis's complaint, it appears that Mahoney's significance is limited to him being the officer who retrieved Willis from the visiting booth, and who would therefore have information about the severity of his injuries.[4] Because Willis did not put the prison on notice that he was complaining about Mahoney's failure to intervene at the time Fisher handcuffed him, he failed to exhaust his claim against Mahoney before he filed his lawsuit.

---

[4] Willis also states in his inmate complaint that Mahoney did not write an incident report. Willis was mistaken: Mahoney *did* write an incident report. (ECF No. 21-1.)

*2. Merits*

Having addressed the exhaustion issue, I will turn to the merits of Willis's claim against Fisher, the only claim that Willis exhausted prior to filing his lawsuit. Willis was allowed to proceed on an excessive-force claim against Fisher based on his allegations that Fisher placed the handcuffs on him too tightly without double-locking them. In their motion for summary judgment, the defendants reframe the claim as a deliberate-indifference claim. They primarily focus on the period when Willis was in the visiting booth. They argue that Willis provides no evidence that Fisher heard him banging on the door, and, even if he did hear him, Willis provides no evidence that Fisher knew Willis was banging on the door because his handcuffs were too tight.

Willis counters that the defendants do not address his assertion that he told Fisher the handcuffs were tight right after he placed them on Willis and that Fisher's response was to tell Willis to shut up and not tell him how to do his job. He also argues that the defendants err in analyzing Fisher's actions under the deliberate-indifference standard rather than under an excessive-force standard, which is the claim the court allowed him to proceed with. I will address the claims under both standards.

*2.1 Deliberate Indifference*

To prevail on a deliberate-indifference claim, a plaintiff must show, in part, that prison officials knew of and disregarded an excessive risk to an inmate's health or safety. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Here, as to the initial handcuffing of Willis, Fisher acknowledges that he did not double-lock the handcuffs;

however, he states that it was a mistake and that he "did not purposefully fail to double-lock the handcuffs in order to cause pain or discomfort." (ECF No. 20 at 7.) The defendants argue that, regardless, even if Fisher had purposefully placed the handcuffs on tightly, "overly tight handcuffs alone do not generally make out a constitutional claim absent extreme circumstances not present here." (ECF No. 18 at 11 (citing *Tibbs v. City of Chi.*, 469 F.3d 661, 665–66 (7th Cir. 2006).)

Willis acknowledges that, at the time Fisher placed the handcuffs on him, Willis did not notice that Fisher had failed to double-lock them. (ECF No. 26 at ¶ 7.) Willis told Fisher only that the handcuffs were too tight; he did not say they were cutting into his wrists or that his hands were numb or that he could not bear the pain. In fact, he explains that, "[d]uring his visit, [he] observed the handcuffs tightening with every move he made and they *began* biting into the back of [his] hands " (ECF No. 30 at ¶ 21) (emphasis added). On this record, the only reasonable conclusion a jury could reach is that, at that time Fisher placed the handcuffs on Willis, the handcuffs were only uncomfortably tight; they were not so tight as to be causing injury to Willis's wrists. Accordingly, no jury could reasonably conclude that Willis was suffering from an objectively serious harm or that Fisher acted with deliberate indifference to such serious harm at the time Fisher handcuffed Willis. *See Gutierrez v. Peters*, 111 F.3d 1364, 1371–72 (7th Cir. 1997) (not "every ache and pain or medically recognized condition involving some discomfort" can support an Eighth Amendment claim).

Further, Willis presents no evidence to suggest that Fisher knew when he handcuffed Willis that there was a risk that the handcuffs would continue to tighten around Willis's wrists. Fisher states that he forgot to double-lock them. Willis acknowledges that he did not notice the handcuffs were not double-locked, so he did not alert Fisher to the risk of them continuing to tighten. Because Willis presents no evidence from which a jury could conclude that Fisher knew Willis faced a risk of the handcuffs continuing to tighten over time, no jury could reasonably conclude that Fisher was deliberately indifferent to that risk.

Regarding any claim arising from Willis's call for help after the handcuffs had tightened while Willis was in the visiting booth, Fisher states that he was in a different part of the unit, so he did not hear Willis banging on the door. (ECF No. 20 at ¶¶ 9–10.) Consequently, he had no idea that Willis's handcuffs had tightened to the point that they were digging into his writs and causing him severe pain. Willis states only that he banged on the door; he provides no evidence to support a conclusion that Fisher heard him banging on the door or that Fisher knew his handcuffs had painfully tightened around his wrists. Accordingly, Willis fails to establish that there is a genuine dispute about whether Fisher was aware of the risk of injury to Willis's wrists while he was in the visiting booth. On this evidence, no jury could reasonably conclude that Fisher was aware of the risk of harm to Willis during the visit.

Because no reasonable jury could find that Fisher acted with deliberate indifference to an objectively serious arm to Willis at any point during the alleged events, Fisher is entitled to summary judgment on Willis's claim under this standard.

*2.2 Excessive Force*

Willis's claim also fails as a matter of law under the excessive-force standard. To prevail on an excessive-force claim, a plaintiff must show that an officer applied force maliciously and sadistically for the very purpose of causing harm, rather than in a good-faith effort to maintain or restore discipline. *U.S. v. Waldman*, 835 F.3d 751, 755 (7th Cir. 2016) (internal quotation marks and citation omitted). The Seventh Circuit has clarified, however, that "under the Eighth Amendment, not every push or shove by a prison guard violates a prisoner's constitutional rights." *Id.* (quoting *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000)).

There is no dispute that Fisher had to handcuff Willis to transport him from his cell to the visiting booth. As already noted, Willis provides no evidence to support a conclusion that the handcuffs were initially placed on him so tightly as to cause significant pain or injury. Willis made a single comment to Fisher about his discomfort right after Fisher handcuffed him. In the minute-long walk from his cell to the visiting booth, Willis did not raise the issue again. It was not until minutes later, *after* Fisher had left Willis in the booth and the handcuffs continued to tighten, that Willis felt them cutting into the backs of his hands. It was only then that he tried to alert officers that the handcuffs were injuring him rather than merely making him

uncomfortable. From this evidence, no reasonable jury could conclude that Fisher was "maliciously and sadistically" trying to harm Willis when he handcuffed him.

Nor does Fisher's response to Willis—to shut up and stop telling him how to do his job—support Willis's claim. While these comments were dismissive, no jury could conclude from them that Fisher knew he had placed the handcuffs on Willis tightly enough to cause significant pain or injury. *See DeWalt*, 224 F.3d at 620 (holding that a single shove resulting in only minor bruising falls short of what is required to state a claim for excessive force under the Eighth Amendment). Fisher is entitled to summary judgment on this claim under this standard.

## CONCLUSION

Willis failed to exhaust his claims against Kacyon and Mahoney. For this reason, they are both entitled to summary judgment. Although Willis exhausted his claim against Fisher, Fisher is also entitled to summary judgment because Willis has not shown that there is a genuine dispute of material fact for a jury, whether analyzed as an excessive-force claim or as a deliberate-indifference claim.

**NOW, IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that Willis's claim against Fisher is **DISMISSED WITH PREJUDICE** and his claims against Mahoney and Kacyon are **DISMISSED WITHOUT PREJUDICE**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this

court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 4th day of September, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge